J-S07007-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
v. :
:
:
:
ANTOINE BAKER :
:
Appellant : No. 897 WDA 2020

Appeal from the PCRA Order Entered August 24, 2020
In the Court of Common Pleas of Mercer County Criminal Division at
No(s): CP-43-CR-0001645-2017

BEFORE: SHOGAN, J., DUBOW, J., and KING, J.

MEMORANDUM BY SHOGAN, J.: **FILED: April 1, 2021**

Appellant, Antoine Baker, appeals from the order denying his first

petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42

Pa.C.S. §§ 9541-9546, following an evidentiary hearing. We affirm.

At the guilty plea hearing in this matter, the Commonwealth

summarized the facts of the case as follows:

> [The Commonwealth]: Your Honor, if this case went to trial,
> we would hear testimony from the victim in this case, Susan
> Salsgiver, who would testify that on September 19th of 2017 she
> was residing at 300 Madison Street, that's in the City of Sharon,
> Mercer County, Pennsylvania.
>
> She would testify that in the early morning hours, at
> approximately 6:00 in the morning, a little thereafter, she was
> standing on her front porch, she noticed a vehicle that was silver
> in color coming slightly up the hill. Didn't think too much of it.
> Ultimately as the vehicle got closer, she recognized [Appellant]
> hanging out of the front seat passenger side window. As
> [Appellant] was hanging out of this window, he began shooting at
> Susan with a firearm. Susan would testify that he fired

approximately three shots and one shot just narrowly missing her head. We would hear testimony from Susan that she is a hundred percent sure that it was [Appellant].

THE COURT: Was she in a relationship with him prior?

[The Commonwealth]: She was not.

THE COURT: Or did know him prior?

[The Commonwealth]: She did know him prior. Actually, [Appellant] had been her son's best friend at some point and so she has actually at some point let [Appellant] live at her residence, so she is very familiar with him.

We would also hear testimony from the responding police officers: Patrolman Emmett, also Sergeant Albanese, who would testify that they did arrive at the scene after they were dispatched by 9-1-1. They did speak with the victim. Ultimately they did canvas the area of the yard in the front of the house.

We would hear testimony from Patrolman McEvoy who would testify that he did spot at least three different bullet holes located at the front of the residence. Ultimately, [he] was not able to track down two of [the] bullets, as it appeared that they ricocheted; weren't able to track down where they ricocheted to, but did actually recover one bullet from the scene.

We would also hear testimony—well, I guess I wouldn't get into the 404(b) stuff, so—

THE COURT: Well, that would be—that would be part of the case.

[The Commonwealth]: And then if the [c]ourt would like me to get into that, then Your Honor—

THE COURT: I think you could.

[The Commonwealth]: Okay.

We would also hear testimony from Susan Salsgiver that two days prior, on September 17th of 2017, again, she was at her residence when somebody threw a glass Brandy bottle, cracking

the front window to the storm door, shattering it, and yelled, "you're a dead bitch." Again, officers did arrive, they did notice the broken grass for the storm door, and they did confiscate the bottle that was thrown into the residence.

Moving forward, Your Honor, we would also—

THE COURT: How could they tie [Appellant] to that?

[The Commonwealth]: Victim was able to identify him—

THE COURT: Okay.

[The Commonwealth]: —as the individual that made that statement and then also threw the bottle into the window.

We would also hear testimony after the drive-by shooting that, umm, there was basically a be-on-the-lookout for a particular vehicle description as well as [Appellant] in this case. Ultimately, officers were not able to track [Appellant] down for several days. They did end up making contact with his probation or parole agent. Mr. Wishart, getting a telephone number for [Appellant] that he used while he was on probation or parole. Ultimately, they [were] able to trace that number to get cell phone tower pings and ultimately were able to apprehend [Appellant] in Hermitage based upon one of the pings they were able to locate the general vicinity that [Appellant] was in. At that point, [Appellant] was placed into custody for this case.

THE COURT: And did [Appellant] have *crimen falsi* prior record?

[The Commonwealth]: Yes, Your Honor. On [Appellant's] prior record, he has a Robbery conviction as an adult, a Felony III, and then also he has a Robbery conviction as a juvenile, which was a Felony I, so he does have two *crimen falsi*.

THE COURT: And would you have used those if [Appellant] chose to testify?

[The Commonwealth]: Yes, Your Honor.

- 3 -

THE COURT:      Now, [Appellant] had given Notice of Alibi and listed some witnesses.  Did at least one of those witnesses have *crimen falsi* record also?

[The Commonwealth]: Yes, Your Honor.  The potential defense witness, Shania Thomas, does have a juvenile adjudication for Robbery.  She also had a Burglary adjudication.  I guess there was some dispute as to whether or not she was actually adjudicated delinquent for that case, but she had at least one.

THE COURT:      And if she testified, that would have been used to impeach her credibility?

[The Commonwealth]:  Correct.

THE COURT:      All right.

N.T. (Guilty Plea), 3/18/19, at 26–29.

The trial court summarized the procedural history as follows:

Appellant was arrested on September 22, 2017, entered a plea of no contest[1] on March 18, 2019, and was sentenced on May 17, 2019.  Appellant was sentenced on the charge of Aggravated Assault in violation of 18 Pa.C.S.A. § 2702(a)(1) to 42 months to 10 years imprisonment.  Appellant did not appeal his sentence.  Throughout this process, Appellant was represented by privately retained counsel, Dustin Cole ("Trial Counsel").

On February 24, 2020, Appellant filed a *pro se* PCRA Petition claiming, among other things, ineffective assistance of counsel. On February 26, 2020, this [c]ourt appointed Whalen Law Offices as Appellant's counsel.  Subsequently, on May 6, 2020, Whalen Law Offices filed a Motion to Withdraw as Counsel along with a **Turner/Finley** no merit letter, and this [c]ourt granted the

_____

[1] "When a defendant enters a plea of [no contest, or] *nolo contendere*, he technically does not admit guilt.  [BLACK'S LAW DICTIONARY (10th ed. 2014] (defining "nolo plea").  However, for purposes of a criminal case, a plea of *nolo contendere* is equivalent to a plea of guilty."  **Commonwealth v. Norton**, 201 A.3d 112, 114 n.1 (Pa. 2019).

- 4 -

motion on May 12, 2020. Appellant, then, elected to proceed *pro se*.

On July 27, 2020, a PCRA Evidentiary Hearing was held. At the hearing, Appellant and Trial Counsel testified, and the [c]ourt made Findings of Fact. ***See*** PCRA Evidentiary Hearing Findings of Fact. No Order was entered on the day of the hearing.

On July 30, 2020, this [c]ourt filed a Notice of Intention to Dismiss along with an Opinion. On August 20, 2020, Appellant filed a Notice of Appeal stating that he appeals "the order, July 27, 2020, denying the petitioner's PCRA." Appellant's Notice of Appeal at p.1. On August 24, 2020, noting that Appellant filed a Notice of Appeal prematurely,[2] this [c]ourt entered a final Order dismissing Appellant's PCRA Petition and subsequently, entered a separate Order requesting Appellant to file a Statement of Errors Complained of on Appeal. On September 3, 2020, this [c]ourt appointed Matthew C. Parson to serve as counsel for Appellant's appeal . . . .

PCRA Court Opinion, 10/19/20, at 2–3. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Whether the trial court erred as a matter of law or abused its discretion in determining that [trial] counsel was not ineffective in failing to review discovery, and providing discovery to [Appellant].

2. Whether the trial court erred as a matter of law or abused its discretion in determining that [trial] counsel was not ineffective in failing to properly inform [Appellant] of his case so that he may enter into a voluntary, knowing[], and intelligent[], guilty plea.

---

[2] The appeal is timely pursuant to Pa.R.A.P. 905(a)(5) which states, "a notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof"; ***see also Commonwealth v. Swartzfager***, 59 A.3d 616, 618 (Pa. Super. 2012) (although initially premature when filed, appeal filed in response to the court-issued Pa.R.A.P. 907 notice of intent to dismiss without a hearing need not be quashed pursuant to Pa.R.A.P. 905(a)(5)).

Appellant's Brief at 5.

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." **Commonwealth v. Stultz**, 114 A.3d 865, 872 (Pa. Super. 2015) (quoting **Commonwealth v. Henkel**, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. **Commonwealth v. Rykard**, 55 A.3d 1177, 1183 (Pa. Super. 2012). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. **Commonwealth v. Rigg**, 84 A.3d 1080, 1084 (Pa. Super. 2014).

To be eligible for relief under the PCRA, a defendant must plead and prove that his conviction and/or sentence resulted from one of the circumstances delineated by the PCRA. **See** 42 Pa.C.S. § 9543 (outlining the eligibility requirements for PCRA relief). Among those requirements are that the issue must not be previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). An issue is previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue[.]" 42 Pa.C.S. § 9544(a)(2).

Appellant's issues assail the effectiveness of trial counsel. To plead and prove ineffective assistance of counsel, a petitioner must establish: (1) that

the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act. **Commonwealth v. Treiber**, 121 A.3d 435, 445 (Pa. 2015). A claim of ineffectiveness will be denied if [Appellant's] evidence fails to meet any one of these prongs. **Commonwealth v. Martin**, 5 A.3d 177, 183 (Pa. 2010). Counsel is presumed to have rendered effective assistance of counsel. **Commonwealth v. Montalvo**, 114 A.3d 401, 410 (Pa. 2015). Moreover, we have explained that trial counsel cannot be deemed ineffective for failing to pursue a meritless claim. **Commonwealth v. Loner**, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*).

With regard to the second prong, we have reiterated that trial counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." **Commonwealth v. Ervin**, 766 A.2d 859, 862-863 (Pa. Super. 2000) (quoting **Commonwealth v. Miller**, 431 A.2d 233 (Pa. 1981)). "The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. . . . The balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis." **Commonwealth v. Pierce**, 527 A.2d 973, 975 (Pa. 1987).

As to the third prong, prejudice requires proof that there is a reasonable probability that but-for counsel's error, the outcome of the proceeding would have been different. **Commonwealth v. Jones**, 210 A.3d 1014, 1017 (Pa.

2019). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009). Thus, when it is clear that a petitioner has failed to meet the prejudice prong of an ineffective-assistance-of-counsel claim, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Baker*, 880 A.2d 654, 656 (Pa. Super. 2005).

Finally, it is presumed that the petitioner's counsel was effective unless the petitioner proves otherwise. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999). Moreover, we are bound by the PCRA court's credibility determinations where there is support for them in the record. *Commonwealth v. Battle*, 883 A.2d 641, 648 (Pa. Super. 2005) (citing *Commonwealth v. Abu-Jamal*, 720 A.2d 79 (Pa. 1998)).

In his first issue, Appellant baldly asserts that trial counsel rendered ineffective assistance by "failing to review discovery with" Appellant. Appellant's Brief at 9. His sole support is his two-sentence, self serving argument referencing his testimony at the PCRA hearing that he "had no idea of the evidence that the [C]ommonwealth had against him," and he "saw his trial counsel one time before entering a guilty plea." *Id.* at 10; N.T. (PCRA), 7/27/20, at 7–9.

In finding that Appellant's argument lacked arguable merit, the PCRA court stated as follows:

First, Trial Counsel testified at the PCRA Evidentiary Hearing that Trial Counsel reviewed the discovery packet with Appellant on multiple occasions. Trial Counsel acknowledged receiving Appellant's discovery packet from the Commonwealth at arraignment. PCRA Evidentiary Hearing Findings of Fact at ¶ 30. Pursuant to local agreement between the Commonwealth and local defense attorneys and in accordance with common practice, Trial Counsel did not give Appellant the discovery packet itself but rather reviewed the contents of the discovery packet with Appellant. *Id.* Trial Counsel testified that every time he met with Appellant, including times in court at call of the list, Trial Counsel reviewed the discovery packet with Appellant. *Id.* at ¶ 36. Trial Counsel testified that when Trial Counsel reviewed the discovery packet with Appellant, Appellant expressed his frustration because Appellant believed there should have been more discovery than was in the discovery packet. *Id.*

Furthermore, Appellant even admitted that Appellant saw his discovery packet two days before his trial. *Id.* at 15. Appellant testified that his discovery packet was "he said/she said" and had "nothing to do with no (sic) hard-earned proof" that Appellant "did anything wrong." PCRA Evidentiary Hearing Transcript at 9:7-8.

Based on Trial Counsel's and Appellant's testimony, this Court properly determined that Trial Counsel did not provide ineffective assistance because Trial Counsel did in fact review Appellant's discovery packet with Appellant.

PCRA Court Opinion, 10/19/20, at 4–5.

As noted *supra*, Appellant's argument focuses solely on his self-serving testimony at the PCRA hearing while ignoring the testimony of trial counsel, which the PCRA court found to be credible. *See* N.T., 7/27/20, at 38 ("I also want to put on the record that I find the testimony of [trial counsel] credible—fully credible. I find the testimony of [Appellant] less than credible."). Credibility determinations are solely within the province of the PCRA court. *Commonwealth v. Johnson*, 966 A.2d 523, 539 (Pa. 2009). After review,

we agree with the sound reasoning of the PCRA court, which is supported by the record, and conclude that the PCRA court did not err in finding this issue lacking in merit. *See **Commonwealth v. Dennis***, 17 A.3d 297 305 (Pa. 2011) (stating that where the record supports the PCRA court's credibility determinations, such determinations are binding on a reviewing court). Accordingly, we do not disturb the PCRA court's findings on this issue.

In his second issue, Appellant maintains that trial counsel was ineffective for allegedly failing to inform Appellant about aspects of his case so that he could enter a voluntary, knowing, and intelligent plea. Appellant's Brief at 11. Again, in support, Appellant relies on the same testimony he offered at the PCRA hearing: that trial counsel only met with Appellant once; that Appellant was unaware of the information the Commonwealth had against him; and Appellant opined that trial counsel "was [not] doing his best to represent him." ***Id.***

The PCRA court thoroughly and fully considered this claim and explained, in concluding that Appellant failed to prove his argument had arguable merit, as follows:

> Trial Counsel testified that in several different meetings with Appellant, Trial Counsel informed Appellant about the positives and negatives of Appellant's case. Trial Counsel testified he met with Appellant before the preliminary hearing, at the preliminary hearing, prior to filing the notice of alibi, and a few days prior to the scheduled trial date. PCRA Evidentiary Hearing Findings of Fact at 26. Trial Counsel further testified that he spoke with Appellant at various times when the matter was scheduled for the call of the list or pretrial conferences. ***Id.*** During these meetings between Trial Counsel and Appellant, Trial Counsel discussed the

positives and negatives of Appellant's case.  **Id.** at 134.  Trial Counsel discussed what Trial Counsel believed were "trouble areas" for a jury and what were "good arguments to make to a jury."  PCRA Evidentiary Hearing Transcript at 20:11-13.

In addition, Appellant admitted that he discussed his no contest plea with Trial Counsel before entering his no contest plea.  More specifically, Trial Counsel addressed any questions or concerns Appellant had with entering his no contest plea including the advantages and disadvantages of accepting the Commonwealth's plea deal.  PCRA Evidentiary Hearing Findings of Fact at ¶ 11.  During Appellant's no contest plea colloquy, the [c]ourt asked Appellant if Appellant had been given the opportunity to discuss his no contest plea with Trial Counsel.  Guilty Plea Colloquy Transcript at 16:20-21.  Appellant responded in the affirmative and said "yes."  **Id.** at 16:22.  The [c]ourt then asked Appellant if Trial Counsel discussed the advantages and disadvantages of accepting the plea deal.  **Id.** at 16:23-24.  Once again, Appellant answered in the affirmative and said "yes."  **Id.** at 16:25.  Finally, the [c]ourt asked Appellant if he was satisfied with the services of Trial Counsel.  **Id.** at 31:10-11.  Yet again, Appellant answered in the affirmative and said "yes."  **Id.** at 31:12.

Most importantly, after hearing testimony of Trial Counsel and Appellant at the Evidentiary Hearing, this [c]ourt found Trial Counsel's testimony "fully credible" while finding Appellant's testimony "less than credible."  PCRA Evidentiary Hearing Transcript at 38:7-8.  This [c]ourt pointed to the fact that during the hearing, Appellant admitted he essentially "lied to the [c]ourt at the time of the plea and said what he needed to say to get the plea through, knowing full well he was going to file a PCRA Petition."  **Id.** at 38:9-12.

PCRA Court Opinion, 10/19/20, at 5–7.

At the guilty plea colloquy, Appellant testified that: counsel discussed the advantages and disadvantages of the plea deal, Appellant believed it was in his best interest to plead no-contest, and he understood the consequences of pleading no-contest, he understood his rights, and he desired to enter the

plea. N.T., 3/18/19, at 17, 19, 20–21, 32. It is well settled that a criminal defendant is bound by the statements he made at his guilty-plea colloquy, which were made in open court while under oath, and he cannot assert grounds for withdrawing his plea that contradicted those sworn statements. ***Commonwealth v. Willis***, 68 A.3d 997, 1009 (Pa. Super. 2013). Because there is no support for Appellant's claim of ineffective assistance of counsel, the issue had no arguable merit. Accordingly, the PCRA court's decision is supported by the record, and we affirm the PCRA court's order denying Appellant's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/1/2021